IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| MICHAEL BEAR,<br>BOP # 11543-084<br><br>    Plaintiff,<br>v.<br><br>UNITED STATES OF AMERICA, et al.,<br><br>    Defendants. | PRISONER CIVIL RIGHTS & FEDERAL TORT CLAIMS ACT 28 U.S.C. §§ 1331, 1346(B) & 2671 et seq.<br><br>CIVIL ACTION FILE NO.<br>1:16-CV-102-TWT-JKL |

## **NON-FINAL REPORT AND RECOMMENDATION**

Plaintiff is currently confined at FCI Elkton in Lisbon, Ohio. Plaintiff, *pro se*, seeks damages and injunctive relief under 28 U.S.C. § 1331 and *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971), and the Federal Tort Claims Act ("FTCA"), 28 U.S.C. §§ 1346(b) and 2671 *et seq.*, in connection with his previous confinement in the United States Penitentiary in Atlanta, Georgia ("USP Atlanta") and his current confinement at FCI Elkton. [Doc. 1.] According to Plaintiff, Defendants have denied him proper medical care.

The Court granted Plaintiff leave to proceed *in forma pauperis* [Doc. 5] and Plaintiff has paid his initial filing fee. The Court now screens his complaint as required by 28 U.S.C. § 1915A.

## I.     The 28 U.S.C. § 1915A Standard

Federal courts must screen a prisoner complaint to determine whether the action:  (1) is frivolous or malicious or fails to state a claim on which relief may be granted; or (2) seeks monetary relief against a defendant who is immune from such relief.  28 U.S.C. § 1915A.  Courts may dismiss a complaint if the alleged facts do not state a claim for relief that is plausible on its face.  *Edwards v. Prime, Inc.*, 602 F.3d 1276, 1291 (11th Cir. 2010).

## II.    Factual Allegations[1]

According to the complaint, Plaintiff injured his shoulder on April 8, 2014, when he tripped and fell at the USP Atlanta coat factory.  [Doc. 1 at 2.]  Plaintiff received treatment for the injury at the Atlanta Medical Center emergency room where an x-ray and CT scan confirmed he had fractured his left proximal humerus.  [*Id.*]  The x-ray also showed severe osteoarthritis of the shoulder joint and evidence of prior repair of Plaintiff's rotator cuff.  [*Id.*]  Plaintiff returned to the prison with a sling and prescribed medications.  [*Id.* at 2-3.]

On May 12, 2014, Plaintiff saw Dr. Stephen M. Kane at Atlanta Medical Center for follow up treatment.  Dr. Kane recommended giving the bone more time

---

[1] The factual allegations are taken from Plaintiff's complaint and are presumed true for purposes of the § 1915A screening.  *See Boxer X v. Harris*, 437 F.3d 1107, 1110 (11th Cir. 2011).

to heal, continuing "nonoperative management." [*Id.* at 3.] On July 28, 2014, Plaintiff saw Dr. Kane for another follow up visit. [*Id.*] In his "Assessment and Plan" Dr. Kane wrote:

> I think there is a possibility of doing a reverse shoulder on him. My biggest concern is that he has a very small acromion, which probably has undergone at least 2 acromioplasty, there is not much left of it. Nonetheless, I do not think there is much other option. I am going to get a CT scan and see him back.

[*Id.* at 11.] Thereafter, Plaintiff claims he began to experience "a pattern of delay and indifference to his shoulder injury by BOP Medical Staff," including Dr. Martin, the Medical Director at USP Atlanta. [*Id.* at 4.] Despite his repeated requests to be scheduled for surgery and a CT scan, Plaintiff alleges he was never given either. Rather, medical staff increased his pain medications. [*Id.*]

On December 31, 2014, Plaintiff filed a claim with the Board of Prisons seeking money damages for the injuries resulting from his fall.[1] [*Id.* at 5, 16.] Plaintiff claims that "[i]n retaliation for . . . having filed a Federal Tort Claim, Dr. Martin . . . removed the 'medical hold' on [Plaintiff] which protected him from arbitrary and or routine transfer from one BOP Prison to the next at Staff's discretion." [*Id.* at 5.] Plaintiff was transferred to FCI Elkton in or about March

---

[1] Plaintiff's claim with the BOP was eventually denied by letter dated July 2, 2015. [Doc. 1 at 19.] Plaintiff sought reconsideration of the denial on December 3, 2015. [*Id.* at 21.]

3

2015. [*Id.*]  At FCI Elkton, Plaintiff claims he has still received neither the CT scan or a surgery for his shoulder.  [*Id.*]  At the time Plaintiff filed his complaint, 21 months had passed since his fall.

Plaintiff contends this failure to provide medical care constitutes cruel and unusual punishment and has caused him emotional and physical suffering.  [*Id.* at 6-7.]  According to Plaintiff, he "has lost the possibility of having normal use of his left shoulder which it now appears may have to be amputated due to the neglect and/or omissions of the BOP Medical staff."  [*Id.* at 7.]

Plaintiff enumerates three claims: (1) an FTCA claim against the United States based on the acts of Dr. Martin and "unknown medical staff"; (2) a *Bivens* claim against Dr. Martin and the unknown medical staff for violating his Fourth and Eighth Amendment rights; and (3) a *Bivens* claim against Dr. Martin and the unknown medical staff for conspiring pursuant to an unwritten BOP policy to deny medical treatment where it is prohibitively expensive.  [*Id.* at 8.]  Plaintiff seeks an injunction requiring Defendants to provide proper medical care, an unspecified amount of compensatory damages, and costs and attorney's fees.  [*Id.* at 8-9.]

## III. Analysis

### A. Federal Tort Claims Act

The United States is the only permissible defendant in an FTCA action. *See* 28 U.S.C. § 2679(b)(1) (stating that the FTCA remedy against the United States "is exclusive of any other civil action or proceeding for money damages by reason of the same subject matter against the employee whose act or omission gave rise to the claim"). "It is well settled that sovereign immunity bars suits against the United States except to the extent that it consents to be sued." *Means v. United States*, 176 F.3d 1376, 1378 (11th Cir. 1999). The FTCA provides a "limited waiver" of this sovereign immunity, "making the United States liable for 'injury or loss of property, or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office [or] employment.'" *JBP Acquisitions, L.P. v. United States ex rel. FDIC*, 224 F.3d 1260, 1263 (11th Cir. 2000) (quoting 28 U.S.C. § 1346(b)(1)). A district court may not entertain an FTCA action "unless the claimant shall have first presented the claim to the appropriate federal agency and his claim shall have been finally denied by the agency in writing." 28 U.S.C. § 2675(a). An agency's failure "to make final disposition of a claim within six months after it is filed shall . . . be deemed a final denial of the claim." *Id.* The claim must be presented to the

agency within two years of its date of accrual and to the district court within six months of the agency's mailing the notice of final denial of the claim. 28 U.S.C. § 2401(b).

Plaintiff presented a claim to the Board of Prisons on December 31, 2014, and that claim was officially denied by letter dated July 2, 2015 (the "BOP Claim"). But, the claim Plaintiff presented in his BOP Claim is not the same claim Plaintiff presents here. In the BOP Claim, Plaintiff stated the basis of his claim as follows:

> Bear tripped on a string tied to a cart, fell and hit his shoulder on the floor fracturing his left shoulder. UNICOR, ATCS Coat factory, southeast side in front of the fabric worker's supervisor's deck [sic]. The string was being used violating all UNICOR safety codes, resulting in this incident.

[Doc. 1 at 16.] In a request for reconsideration after denial of his BOP Claim, Plaintiff reiterates his claim as follows:

> 1. The injury sustained was caused by my tripping on a string tied to a cart in front of the Factory Supervisor's desk. There had been other occurrences where similar incidents occurred at the same supervisor's desk;
> 2. The injury sustained was not "work-related;" albeit, it occurred in the Coat factory; and
> 3. Contrary to your official assessment, I am seeking total compensation of Five Million Dollars ($5,000,000.00) not Five Hundred Thousand Dollars ($500,000.00) as you set out in your denial.

[*Id.* at 21.] In none of the recitations of his claim does Plaintiff allege denial of medical care. Plaintiff did mention in a letter dated July 29, 2015, that he had been denied "timely and proper medical care" but this was not until nearly one month after his claim had been officially denied by the BOP. [*Id.* at 17.] Because Petitioner has not presented his claim of deliberate indifference to a medical need to the BOP, he fails to state an FTCA claim that is plausible on its face.

**B.     *Bivens* Claims**

To state a claim for relief under *Bivens v. Six Unknown Named Agents*, 403 U.S. 388 (1971), a plaintiff must allege that a federal agent, by act or omission under color of federal authority, deprived him of a right, privilege, or immunity secured by the Constitution of the United States. *See Powell v. Lennon*, 914 F.2d 1459, 1463 (11th Cir. 1990); *see also Richardson v. Johnson*, 598 F.3d 734, 737 (11th Cir. 2010) (setting forth similar requirements for 42 U.S.C. § 1983 claim against person acting under color of state law); *Bolin v. Story*, 225 F.3d 1234, 1242 (11th Cir. 2000) (noting that "as a general matter federal courts incorporate § 1983 law into *Bivens* actions").

**1.     Dr. Martin**

Accepting Plaintiff's allegations as true, the complaint states three possible, non-frivolous *Bivens* claims against Dr. Martin. First, Plaintiff states an Eighth

Amendment claim for deliberate indifference to a medical need. The Eleventh Circuit has recognized that "[d]elay in providing diagnostic care and medical treatment known to be necessary can qualify as deliberate indifference." *Simmons v. Monserrate*, 489 F. App'x 404, 406 (11th Cir. 2012) (quoting *H.C. ex rel. Hewett v. Jarrard*, 786 F.2d 1080, 1086 (11th Cir. 1986) (internal quotation marks omitted)); *see also Ancata v. Prison Health Servs., Inc.*, 769 F.2d 700, 704 (11th Cir. 1985) ("[I]f necessary medical treatment has been delayed for non-medical reasons, a case of deliberate indifference has been made out."). Accordingly, Plaintiff's deliberate indifference claim against Dr. Martin should be allowed to proceed.

Second, Plaintiff arguably states a conspiracy claim. Plaintiff claims Dr. Martin and the unknown medical staff conspired with each other pursuant to an unwritten BOP policy to deny medical treatment that is prohibitively expensive. [Doc. 1 at 6, 8.] To establish a conspiracy, Plaintiff must allege that the defendants "reached an understanding," *i.e.*, an agreement, to violate his rights. *Rowe v. City of Fort Lauderdale*, 279 F.3d 1271, 1283 (11th Cir. 2002); *Bailey v. Board of Cty. Comm'rs of Alucha Cty.* 956 F.2d 1112, 1122 (11th Cir. 1992) ("[T]he linchpin for conspiracy is agreement, which presupposes communication . . . ."). Generally, "[i]n conspiracy cases, a defendant must be informed of the nature of the

conspiracy which is alleged. It is not enough to simply aver in the complaint that a conspiracy existed." *Fullman v. Graddick*, 739 F.2d 553, 557 (11th Cir. 1984).

While Plaintiff has not alleged much more than the fact that a conspiracy exists based on an unwritten BOP policy, and although it appears that "actual proof of [this claim] is improbable, and that recovery is very remote and unlikely," the undersigned cannot find that it warrants *sua sponte* dismissal at this stage in the proceedings. *Bowens v. Superintendant of Miami S. Beach Police Dep't*, 557 F. App'x 857, 861 (11th Cir. 2014). Out of an abundance of caution, therefore, Plaintiff's conspiracy claim should also be allowed to proceed against Dr. Martin.

Lastly, Plaintiff states a non-frivolous First Amendment claim against Dr. Martin. Although prison assignments and transfers "within the sentence imposed" do not generally implicate constitutional concerns, *see Sandin v. Conner*, 515 U.S. 472, 480 (1995), retaliation for a prisoner's exercise of First Amendment rights generally is actionable. *Bridges v. Russell*, 757 F.2d 1155, 1156 (11th Cir. 1985); *see also Williams v. Brown*, 347 F. App'x 429, 435 (11th Cir. 2009) (recognizing claim for retaliatory transfer).

Plaintiff alleges that in retaliation for his filing a tort claim with the BOP, Dr. Martin removed the medical hold preventing Plaintiff's transfer and Plaintiff was, in fact, transferred to FCI Elkton. In deference to Plaintiff's *pro se* status, and

construing his pleadings liberally, at this stage of the proceedings the undersigned cannot say that Plaintiff's retaliation claim warrants a *sua sponte* dismissal as "lack[ing] an arguable basis in either law or in fact." *Miller v. Donald*, 541 F.3d 1091, 1100 (11th Cir. 2008). Accordingly, a First Amendment retaliation claim against Dr. Martin should be allowed to proceed.

### 2. Unknown Medical Staff

Plaintiff also names as defendants "Unknown Medical Staff of the U.S. Bureau of Prisons." [Doc. 1 at 1.] As an initial matter, to the extent Plaintiff intends the unknown medical staff to include individuals at FCI Elkton, this Court lacks jurisdiction over them. *Scuptchair, Inc. v. Century Arts, Ltd.*, 94 F.3d 623, 626 (11th Cir. 1996) (requiring "sufficient minimum contacts between the defendants and the forum state" for exercise of personal jurisdiction); *see also Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985) (same). Plaintiff must pursue any claims against those individuals, as well as any claim for injunctive relief against them, in the appropriate federal district court in Ohio.

With respect to any intended defendants within this district, lack of personal jurisdiction should not bar Plaintiff's recovery. While as a general matter, fictitious party pleading is not permitted in federal court, *Richardson*, 598 F.3d at 738, "[i]t is important to distinguish suing fictitious parties from real parties sued

under a fictitious name." *Dean v. Barber*, 951 F.2d 1210, 1215-16 (11th Cir. 1992) (internal quotation marks and citations omitted).  A claim may be stated against unnamed defendants where "allegations in the complaint make clear the plaintiff could uncover the names through discovery." *Bowens*, 557 F. App'x at 862. *But see Keno v. Doe*, 74 F.R.D. 587, 588 n.2 (D.N.J. 1977) ("[C]omplaint should state that the name is fictitious and provide an adequate description of some kind which is sufficient to identify the person involved so that process can be served."), *aff'd without opinion,* 578 F.2d 1374 (3rd Cir. 1978).

Plaintiff's complaint does not currently allege sufficient facts to allow service of process on any of the unknown medical staff defendants.  [Doc. 1 at ¶¶ 12, 19, 23-25.]  It is not clear, however, that Plaintiff would be unable to uncover sufficient facts to identify the unknown individuals through discovery.  Accordingly, Plaintiff's claims should be allowed to proceed against the unknown medical staff defendants at this time.  Plaintiff is **ADVISED** that it is his responsibility to provide the Court with sufficient information to serve the currently unnamed medical staff.  His failure to do so is fatal to his claims against them.

### C. Injunctive Relief

Because Plaintiff is no longer housed in this district, his claim for injunctive relief against Dr. Martin and the unknown medical staff at USP Atlanta is moot.

## IV. CONCLUSION

For the foregoing reasons, **IT IS RECOMMENDED** that Plaintiff's *Bivens* claims for deliberate indifference to his medical needs and conspiracy against Dr. Martin and unknown medical staff at USP Atlanta be **ALLOWED TO PROCEED.** A *Bivens* claim for retaliation against Dr. Martin should also be **ALLOWED TO PROCEED**.

**IT IS FURTHER RECOMMENDED** that Plaintiff's FTCA claim as well as Plaintiff's *Bivens* claims against any medical staff at FCI Elkton be **DISMISSED WITHOUT PREJUDICE**. Plaintiff's claim for injunctive relief against Dr. Martin and USP Atlanta medical staff should be **DENIED AS MOOT**.

If this Non-Final Report and Recommendation is adopted, I will issue an appropriate Order regarding service of process.

**IT IS SO RECOMMENDED** this 24th day of May, 2016.

_____
JOHN K. LARKINS III
UNITED STATES MAGISTRATE JUDGE