IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| MICHAEL BEAR,<br>BOP # 11543-084<br><br>　　Plaintiff,<br>v.<br><br>DR. MARTIN, et al.,<br><br>　　Defendants. | PRISONER CIVIL RIGHTS<br>28 U.S.C. § 1331<br><br>CIVIL ACTION FILE NO.<br>1:16-CV-102-TWT-JKL |

## FINAL REPORT AND RECOMMENDATION

Plaintiff is an inmate confined at the Springfield Medical Center for Federal Prisoners in Springfield, Missouri. Plaintiff, *pro se*, seeks damages pursuant to 28 U.S.C. § 1331 and *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971), in connection with his previous confinement in the United States Penitentiary in Atlanta, Georgia ("USP Atlanta"). He was granted leave to proceed *in forma pauperis*. This matter is now before the Court for an initial screening of the second amended complaint [58] and for consideration of Defendants Dr. Martin, Dr. James Winston, and Ms. T. Hollinger's motion to dismiss [59]. Plaintiff has filed a response in opposition to the motion to dismiss. [Doc. 62.] For the reasons stated below, the undersigned **RECOMMENDS** that the motion to dismiss [59] be **GRANTED** and that this case be **DISMISSED**.

## I.     STANDARD OF REVIEW

Pursuant to 28 U.S.C. § 1915A, a federal court is required to screen "as soon as practicable" a prisoner complaint that "seeks redress from a governmental entity or officer or employee of a governmental entity." 28 U.S.C. § 1915A(a). However, the Court must dismiss a prisoner complaint that is either (1) "frivolous, malicious, or fails to state a claim upon which relief may be granted"; or (2) "seeks monetary relief from a defendant who is immune from such relief." *Id.* § 1915A(b). A claim is frivolous, and must be dismissed, when it "lacks an arguable basis either in law or in fact." *Miller v. Donald*, 541 F.3d 1091, 1100 (11th Cir. 2008). A district court may also dismiss a complaint if the alleged facts do not state a plausible claim for relief. *Sinaltrainal v. Coca-Cola Co.*, 578 F.3d 1252, 1260 (11th Cir. 2009).

When considering a motion pursuant to Rule 12(b)(6), the complaint is construed in the light most favorable to the plaintiff and its allegations are taken as true. *Erickson v. Pardus*, 551 U.S. 89, 93-94 (2007); *American Life Ins. Co. v. Martinez*, 480 F.3d 1043, 1057 (11th Cir. 2007). Moreover, "a *pro se* pleading is to be construed more liberally than a counseled pleading." *Alsobrook v. Alvarado*, 477 F. App'x 710, 711 (11th Cir. 2012); *Powell v. Lennon*, 914 F.2d 1459, 1463 (11th Cir. 1990). "While a complaint attacked by a Rule 12(b)(6) motion to

dismiss does not need detailed factual allegations," something "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action" is necessary. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but has not 'show[n] – 'that the pleader is entitled to relief.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009) (quoting Fed. R. Civ. P. 8(a)(2)).

## II.    FACTUAL ALLEGATIONS[1]

Plaintiff injured his shoulder on April 8, 2014, when he tripped and fell while working at the USP Atlanta coat factory. [Doc. 58 at 3.] He received treatment for the injury at the Atlanta Medical Center emergency room where an x-ray and CT scan confirmed he had fractured his left proximal humerus. [*Id.*] The x-ray also showed severe osteoarthritis of the shoulder joint and evidence of prior repair of Plaintiff's rotator cuff. [*Id.* at 3, 5.] Plaintiff returned to the prison with a sling and prescribed medications. [*Id.* at 5.] At discharge, Latonya Hendricks, D.O., directed Plaintiff to "[t]ake all medications as instructed. Avoid overhead

---

[1] Unless otherwise noted, the factual allegations are taken from Plaintiff's second amended complaint [58], as well as documents incorporated by reference therein, and are presumed true for the purpose of this motion to dismiss and § 1915A screening.

reaching and lifting. Follow-up with orthopedic surgery [sic] in one week or earlier if not well for re-evaluation and further surgical management." [Doc. 28-1 at 2.]

On May 12, 2014, Plaintiff saw Dr. Stephen M. Kane at Atlanta Medical Center for follow up treatment. Dr. Kane recommended giving the bone more time to heal, continuing "nonoperative management." [Doc. 58 at 5.] On June 19, 2014, Brenda Maxwell, MRAS, issued an administrative note indicating that Plaintiff had been approved for "Orthopedics" and that Plaintiff would be "scheduled accordingly." [Doc. 28-6 at 1.]

On July 28, 2014, Plaintiff saw Dr. Kane for a second follow up visit. [Doc. 58 at 5.] In his "Assessment and Plan" Dr. Kane wrote:

> I think there is a possibility of doing a reverse shoulder on him. My biggest concern is that he has a very small acromion, which probably has undergone at least 2 acromioplasty, there is not much left of it. Nonetheless, I do not think there is much other option. I am going to get a CT scan and see him back.

[*Id.* at 6; Doc. 28-2 at 1.]

Thereafter, Plaintiff claims he began to experience "a pattern of delay and indifference to his shoulder injury by BOP Medical Staff." [*Id.*] Despite his repeated requests to be scheduled for surgery and a CT scan, Plaintiff alleges he

4

was never given either and medical staff merely increased his pain medications.[2] [*Id.*] In fact, Plaintiff had been approved for a CT scan as of October 16, 2014, and the CT scan was performed on January 14, 2015. [Doc. 28-2 at 2; Doc. 28-3 at 12, 15.] The CT scan showed "findings consistent with a chronic, healed right humeral neck fracture." [*Id.*]

Plaintiff was transferred from USP Atlanta to FCI Elkton in Lisbon, Ohio in March 2015. On April 1, 2015, at the new facility, Plaintiff saw a clinician who submitted a request for an orthopedic consult. [Doc. 28-3 at 15.] That request was denied in favor of physical therapy, which was completed on April 15, 2015. [*Id.*] The physical therapist noted increased strength, but very limited range of motion, and recommended Plaintiff for an orthopedic consult, which was approved. [*Id.*]

Plaintiff saw an orthopedist on July 31, 2015, who recommended referral to a shoulder specialist for possible conventional total shoulder replacement as opposed to reverse shoulder replacement. [Doc. 28-3 at 16.] The referral to a specialist was approved on September 17, 2015. [*Id.*; Doc. 28-6 at 2.] It is not clear how Plaintiff's medical treatment progressed after this, but he was transferred

---

[2] Despite repeated allegations that he never received a CT scan, Plaintiff concedes in his response brief that a CT scan was, in fact, performed on January 14, 2015. [Doc. 62 at 10-11.] Plaintiff also denies he was ever provided a CT scan in the same document. [*Id.* at 9.]

to the Springfield Medical Center for Federal Prisoners sometime near the end of 2016 and Plaintiff states that he has "just recently received two distinct surgeries relevant to his shoulder." [Doc. 21; Doc. 62 at 10.]

### III. PROCEDURAL HISTORY

Plaintiff initially filed his complaint on January 12, 2016, asserting claims for deliberate indifference to his medical needs, retaliation in violation of the First Amendment, and conspiracy to violate his constitutional rights. [Doc. 1.] Plaintiff named as Defendants the United States, Dr. Martin, and certain unknown medical staff. Upon the undersigned's review of Plaintiff's complaint pursuant to 28 U.S.C. § 1915A, Plaintiff was allowed to proceed on his Eighth Amendment deliberate indifference claim and the conspiracy claim against Dr. Martin and the unnamed medical staff. He was also allowed to proceed on a retaliation claim against Dr. Martin. A summons was issued for Dr. Martin and was served on December 12, 2016.[3] [Doc. 10.]

When no further activity in this case occurred, the Court issued an Order on July 12, 2017, ordering Plaintiff to show cause why the case should not be dismissed for his failure to prosecute. [Doc. 24.] Plaintiff responded, requesting

---

[3] Though a summons was issued for Dr. Martin, a summons was not issued or prepared for the United States Attorney or the Attorney General of the United States as required by Federal Rule of Civil Procedure 4(i)(2) and (3).

an additional 45 days to proceed with a new jailhouse lawyer. Plaintiff's request was granted. [Doc. 27.]

On September 18, 2017, Plaintiff filed an amended complaint, which the Court construed as a motion to amend. [Doc. 28.] The Court granted leave to amend on September 27, 2017. [Doc. 29.] In his new complaint, Plaintiff still named Dr. Martin as a Defendant, and added five new Defendants – Warden Drew, Dr. James Winston, HSA T. Hollinger, Dr. Norbert Rosario, and Dr. Lennor Bonnet. The three doctors and Defendant Hollinger were substituted for the previously unknown medical staff. Plaintiff asserted an Eighth Amendment claim for deliberate indifference against all Defendants, seeking $50,000,000,000 against each Defendant in their individual capacities.

Summonses were prepared and issued. Service was returned unexecuted on Warden Drew. Dr. Martin was served on December 12, 2017. The United States Attorney was served on October 24, 2017, and the Attorney General was served on November 10, 2017. The docket does not reflect that service has been executed on any other Defendant.

Nonetheless, on February 20, 2018, Defendants T. Hollinger, Martin, and Winston moved for a more definite statement pursuant to Federal Rule of Civil Procedure 12(e). [Doc. 50.] The motion was granted by Order dated March 22,

2018. [Doc. 54.]

On April 24, 2018, Plaintiff filed a second amended complaint. [Doc. 58.] Rather than merely clarifying the claims made in his earlier amendment, Plaintiff removed Warden Drew as a Defendant.[4] Plaintiff states that Defendants' refusal to provide him with necessary surgery has caused him to lose the "normal use of his left shoulder which . . . now appears may have to be amputated due to the denial of medical treatment" by Defendants. [Doc. 58 at 8.] He asserts a violation of his Eighth Amendment rights and again seeks $50,000,000,000 in damages against each individual Defendant "under Bivens." [Doc. 58 at 5.]

Plaintiff filed the present motion to dismiss on May 10, 2018. [Doc. 59.] Plaintiff filed his response on July 2, 2018. [Doc. 62.]

### IV. ANALYSIS

To state a claim for relief under *Bivens v. Six Unknown Named Agents*, 403 U.S. 388 (1971), a plaintiff must allege that a federal agent, by act or omission

---

[4] Plaintiff also lists the United States as a Defendant in the caption of the complaint but does otherwise indicate that he is attempting to proceed on a claim against the United States. Plaintiff also lists the United States Attorney as a Defendant in Section III. A. of the complaint but indicates no basis for any liability of the U.S. Attorney in his allegations. In his response brief responding to Defendant's motion to dismiss, Plaintiff does not list the United States or the U.S. Attorney as Defendants in the case caption. It appears that Plaintiff listed the United States and the U.S. Attorney as parties to this action in error.

under color of federal authority, deprived him of a right, privilege, or immunity secured by the Constitution of the United States. *See Powell v. Lennon*, 914 F.2d 1459, 1463 (11th Cir. 1990); *see also Richardson v. Johnson*, 598 F.3d 734, 737 (11th Cir. 2010) (setting forth similar requirements for 42 U.S.C. § 1983 claim against person acting under color of state law); *Bolin v. Story*, 225 F.3d 1234, 1242 (11th Cir. 2000) (noting that "as a general matter federal courts incorporate § 1983 law into *Bivens* actions").

The Eighth Amendment protects prisoners from prison officials' deliberate indifference to their serious medical needs. *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). Delayed or denied access to medical care for jail inmates can violate the Constitution, *Estelle*, 429 U.S. at 104, but a plaintiff must allege facts that plausibly show: (1) the plaintiff had a serious medical need; (2) the defendant was deliberately indifferent to that need; and (3) there is a causal connection between that indifference and the plaintiff's injury. *Mann v. Taser Int'l*, 588 F.3d 1291, 1306-07 (11th Cir. 2009). A defendant is deliberately indifferent only if he: (1) subjectively knew of a risk of serious harm; (2) disregarded that risk; and (3) displayed conduct beyond gross negligence. *Pourmoghani-Esfahani v. Gee*, 625 F.3d 1313, 1317 (11th Cir. 2010). "A 'serious medical need' is one that has been diagnosed by a physician as requiring treatment or one that is so obvious that

a lay person would recognize the need for medical treatment." *Gee*, 625 F.3d at 1317.

Negligence, even rising to the level of medical malpractice, does not constitute deliberate indifference. *McElligott v. Foley*, 182 F.3d 1248, 1254 (11th Cir. 1999). Moreover, a simple disagreement over a diagnosis or course of treatment does not constitute deliberate indifference. As long as the medical treatment is "minimally adequate," a prisoner's preference for a different treatment does not give rise to a constitutional claim. *Harris v. Thigpen*, 941 F.2d 1495, 1504-05 (11th Cir. 1991).

In the second amended complaint, Plaintiff alleges that Defendants' failure to provide him with necessary surgery violated his Eighth Amendment rights. The medical records submitted by Plaintiff, however, do not show that a surgery was ever ordered or deemed necessary while Plaintiff was under Defendants' care. Dr. Hendricks makes a vague reference to follow up with an orthopedist for "further surgical management" and Dr. Kane mentions the "possibility" of a shoulder surgery. At no time did a doctor state that immediate surgery was appropriate. Rather, Dr. Kane recommended that a CT scan be performed to determine *if* surgery was appropriate. Accordingly, Defendants' failure to arrange a shoulder surgery does not constitute deliberate indifference.

This conclusion is buttressed by the medical treatment Plaintiff received after he left Defendants' care and supervision. Once transferred to FCI Elkton, Plaintiff continued to be evaluated and was not ordered to have immediate surgery. Rather, he was treated with physical therapy. Plaintiff was later approved for further consultation with an orthopedist and shoulder specialist. [Doc. 28-3 at 16.] Plaintiff was transferred to Springfield Medical facility sometime near the end of 2016 and only recently, according to Plaintiff, received surgical intervention. While Plaintiff's shoulder injury would constitute a "serious medical need," there is no indication that surgery was appropriate, much less that it was the only reasonable treatment option. As a result, Plaintiff's claim amounts to a simple disagreement over course of treatment and does not constitute deliberate indifference.

Even liberally construing Plaintiff's complaint to include a claim that Defendants were deliberately indifferent because there was an approximately five-month delay in providing him with a CT scan, Plaintiff has not stated a plausible claim for relief. The Eleventh Circuit has recognized that "[d]elay in providing diagnostic care . . . known to be necessary can qualify as deliberate indifference." *Simmons v. Monserrate*, 489 F. App'x 404, 406 (11th Cir. 2012) (quoting *H.C. ex rel. Hewett v. Jarrard*, 786 F.2d 1080, 1086 (11th Cir. 1986) (internal quotation

11

marks omitted)).  In determining whether a delay in care violates the Eighth Amendment, "relevant factors include: (1) the seriousness of the medical need; (2) whether the delay worsened the medical condition; and (3) the reason for the delay." *Gainey v. Lopez-Rivera*, No. 3:16cv486/MCR/EMT, 2018 WL 1464056, at *2 (N.D. Fla. Feb. 22, 2018) (quoting *Goebert v. Lee Cty.*, 510 F.3d 1312, 1327 (11th Cir. 2007)) (internal quotation marks omitted).  Here, there is no indication that the five-month wait to get a CT scan worsened Plaintiff's medical condition because even after the CT scan was performed, Plaintiff waited another two years or more before having surgery.

While Plaintiff has stated that Defendants' failure to provide him with surgery caused him emotional and physical pain and suffering, he also admits that Dr. Martin continued to treat his pain.  And although Plaintiff has been asserting since January 2016 that Defendants' failure to provide him with surgery caused him to lose normal use of his left shoulder, which "now appears may have to be amputated," he has managed to avoid this drastic result thus far.  [Doc. 1 at 7.] Plaintiff's complaint does not describe conduct by Defendants that goes beyond gross negligence.  Accordingly, he has failed to state a plausible claim for relief with respect to an Eighth Amendment claim.

While only Defendants Martin, Hollinger, and Winston have filed a motion to dismiss, the undersigned finds, pursuant to 28 U.S.C. § 1915A, that the second amended complaint fails to state a plausible claim for relief against all named Defendants.

## IV.   CONCLUSION

For the reasons stated above, the motion to dismiss [59] should be **GRANTED** and this case should be **DISMISSED**.  The Clerk is **DIRECTED** to terminate the referral to the undersigned.

**IT IS SO RECOMMENDED** this 29th day of August, 2018.

_____
JOHN K. LARKINS III
UNITED STATES MAGISTRATE JUDGE